**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| GEORGE PHIPPS<br>22 Wlodarczyk Place<br>Parlin, NJ 08859<br><br>          Plaintiff,<br><br>v.<br><br>BOROUGH OF ROSELLE<br>210 Chestnut Street<br>Roselle, NJ 07203<br><br>          Defendant. | CIVIL ACTION<br><br>NO.: **21-17625**<br><br><br><br><br><br>**JURY TRIAL DEMANDED** |

**SECOND AMENDED CIVIL ACTION COMPLAINT**

George Phipps (*hereinafter* referred to as "Plaintiff," unless indicated otherwise) by and through his undersigned counsel, hereby avers as follows:

**INTRODUCTION**

1. Plaintiff has initiated this action to redress violations by the Borough of Roselle of the Americans with Disabilities Act, as amended ("ADA" – 42 U.S.C. §§ 12101 *et seq*.), the New Jersey Law Against Discrimination ("NJ LAD"), the Family and Medical Leave Act ("FMLA" – 29 U.S.C. § 2601 *et seq*.), and New Jersey common law. As a direct consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

## JURISDICTION AND VENUE

2.  This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1342(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal laws.

3.  This Court may properly assert personal jurisdiction over the Defendant because its contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standards set forth by the United States Supreme Court in *International Shoe Co. v. Washington*, 325 U.S. 310 (1945) and its progeny.

4.  Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because Defendant is deemed to reside where it is subjected to personal jurisdiction, rendering Defendant a resident of the District of New Jersey.

5.  Plaintiff properly exhausted his administrative remedies as to his ADA claims, as he timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and received notices of his right to sue.

## PARTIES

6.  The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7.  Plaintiff is an adult individual with an address as set forth in the caption.

8.  Defendant Borough of Roselle (*hereinafter* referred to as "Defendant") is a municipality in Union County, New Jersey governed by an elected Mayor and six (6) council members (*hereinafter* referred to as "Defendant's Council").

9. At all times relevant herein, Defendant acted by and through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for the Defendant.

## FACTUAL BACKGROUND

10. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

11. Starting on or about February 4, 2002, Plaintiff has given over nineteen (19) years of dedicated service to Defendant having worked in various positions for Defendant's Department of Public Works ("DPW") and is still working for Defendant.

12. For example, Plaintiff's employment history with Defendant is as follows:

   i. Laborer for Defendant's DPW from February of 2002 through January of 2006;

   ii. Truck Driver for Defendant's DPW from January of 2006 through March of 2009;

   iii. Assistant Supervisor for Defendant's DPW from March of 2009 through August of 2010;

   iv. Superintendent of Defendant's DPW from August of 2010 through January of 2016;

   v. Assistant Supervisor for Defendant's DPW from January of 2016 through in or about July 2019;

   vi. Assistant Superintendent from in or about mid-July 2019 through in or about January of 2020; and

vii. Superintendent of DPW effective January 3, 2020 until the events in question occurred as discussed *infra* and form the basis for this lawsuit.

**Plaintiff's Demotion from Superintendent and/or Failure to Hire for Superintendent in January of 2021**

13. Defendant's DPW is responsible for the construction, operation and maintenance of public facilities, infrastructure and assets within the municipality. DPW performs and/or oversees the Divisions of Administration, Sanitation/Recycling Operations, Facilities Maintenance, Field Operations, Fleet Operations and City-Wide Operations.

14. At the head of DPW is the Superintendent position that reports directly to the Borough Administrator. However, the status of employment for the Superintendent is also controlled by elected officials of Defendant: its Mayor, currently Donald A. Shaw (*hereinafter* "Mayor") and Defendant's six-member Council.

15. Each year, the Mayor nominates candidate(s) to fill the role of Superintendent and Defendant's Council, by way of majority vote, either appoint the Mayor's nomination or deny the nomination. The position holds a term of one year but <u>does not have a limit on the number of terms an individual can serve.</u>

16. Plaintiff served in the role of DPW Superintendent for over 5.5 years, starting on or about August 22, 2010 when the Council appointed him to serve as the Interim Superintendent, and reappointing him as Superintendent in calendar years 2012, 2013, 2014 and 2015.

17. In or about January of 2016, Plaintiff was not re-appointed to Superintendent – this was despite Plaintiff came with the full support and formal recommendation of then Mayor Christine Dansereau, and members of the public he served (who were outraged and appeared for public comment at council meetings to state their dissatisfaction with this decision).

18. Rather than re-appoint Plaintiff to a position he had held without issue or incident for a period of 5.5 years, Defendant left the position vacant for 2016.

19. In 2017, Plaintiff again was recommended for reappointment as Superintendent with the full support of the Mayor and the public he served; however, Defendant refused to appoint him and again left the position vacant.

20. Defendant finally appointed an "Interim Superintendent," one Duane Patterson in or about June of 2017 (Plaintiff's subordinate and someone significantly less qualified than Plaintiff).

21. Patterson remained the "Interim Superintendent" for the remainder of 2017 and until March 29, 2018, when he was formally appointed as actual Superintendent (when he finally obtained his CPWM[1] certificate).

22. Plaintiff filed a federal lawsuit in this District Court, alleging *inter alia* that Defendant's refusal to re-appoint him in 2016/2017 and 2018 was as a result of his having pursued a workers' compensation claim, having suffered from various disabilities/making related requests for workplace accommodations, and the filing of EEOC Charges against Defendant. This suit shall be referred to as the "2018 Lawsuit."

23. Plaintiff amended his then 2018 Lawsuit to include a retaliatory failure to appoint in 2019, given he was told by Defendant's then Mayor and a council member that his pending federal litigation would severely impact his chances of reappointment.

---

[1] "Certified Works Professional Management." This certification is issued to recognize individuals in the public works field who have the knowledge and experience to manage organizations within a public works department, and is typically for public works managers, superintendents and supervisors ready for management positions.

24. During the litigation of the 2018 Lawsuit, Defendant appointed a new Superintendent (one Louis Mollindo) for calendar year 2019.

25. In the Fall of 2019, Plaintiff's 2018 Lawsuit concluded.

26. Plaintiff was finally re-appointed to a Superintendent role effective January 3, 2020.

27. Plaintiff's reporting hierarchy while he was Superintendent during 2020 included then Borough Administrator Jack Layne, and Assistant Superintendent Everett Falt.

28. During his 2020 tenure, he received significant positive feedback while serving as Superintendent (both from his supervisors, and the public generally).

29. Plaintiff commenced an FMLA-qualifying leave of absence on or about November 16, 2020 for his own serious health conditions.

30. While Plaintiff initially thought he would only need a week or slightly more of leave (which is what he first informed Layne & Falt), Plaintiff's serious health conditions necessitated a medical leave longer than that, as he was taking time off for mental health issues (which were related to an ongoing workers compensation claim through Defendant, of which Defendant's management were acutely aware).

31. Defendant is not a sophisticated employer when it comes to FMLA and is rather haphazard with complying with federally mandated notice provisions.

32. When an employee gives notice of FMLA related leave, the employer must provide each of the following FMLA notices to an employee:

(1) Eligibility Notice. Once an employee notifies an employer of an FMLA qualifying medical leave, including the birth of a child, "the employer must notify the employee of the employee's eligibility to take FMLA leave within five business days" of ascertaining that her leave may be for an FMLA-qualifying reason, absent extenuating circumstances. 29 C.F.R. 825.300(b)(1);

(2) **Right and Responsibilities Notice**. Whenever the eligibility notice is provided, "Employers shall provide written notice detailing the specific expectations and obligations of the employee **and explaining any consequences of a failure to**

**meet these obligations**. . . Employers are also expected to responsively answer questions from employees concerning their rights and responsibilities under the FMLA." 29 C.F.R. 825.300(c)(1);

(3) Designation Notice. Within five days of when an employer has enough information to determine whether the employee's leave is FMLA qualifying, the employer must notify the employee in writing as to whether the leave will be designated and will be counted as FMLA leave. 29 C.F.R. 825.300(d)(1), (4). "If the employer will require the employee to present a fitness-for-duty certification to be restored to employment, the employer must provide notice of such requirement with the designation notice." 29     C.F.R. 825.300(d)(3); and

Moreover,"[t]he employer must notify the employee of the amount of leave counted against the employee's FMLA leave entitlement. If the amount of leave is known at the time the employer designates the leave as FMLA-qualifying, the employer must notify the employee of the number of hours, days, or weeks that will be counted against the employee's FMLA leave entitlement in the designation notice. . ." 29 C.F.R. 825.300(d)(6).

33.     Defendant did not comply with any of the above individualized notification, eligibility or designation requirements.

34.     Instead, Defendants sent a blank certification of a health care provider from for FMLA and an internal Borough form for FMLA (neither of which Plaintiff was told he needed to compete in order to complete his job, and neither of which Plaintiff filled out as he was already on approved "disability" as a result of his workers' compensation claim and had no idea he had a right to ***federally job protected leave for up to 12 weeks with a right to reinstatement***.

35.     During Plaintiff's protected medial leave (under both the FMLA and ADA/LAD), without any type of warning or notice – Defendant sought to fill Plaintiff's job.

36.     On or about January 26, 2021, Plaintiff contacted Mr. Falt, informing him he was ready to return to work.

37.     At this point, Defendant was legally obligated to reinstate him to the same or equivalent position.  29 CFR § 825.215 defines equivalent position.  An "equivalent position is one that is virtually identical to the employee's former position in terms of pay, benefits and

7

working conditions, including privileges, perquisites and status. It must involve the same or substantially similar duties and responsibilities, which must entail substantially equivalent skill, effort, responsibility, and authority." *Id.* (Emphasis added). Plaintiff was not reinstated to the same or similar position, as defined by federal regulations.

38. Plaintiff expected to resume his role as Superintendent (and this was both permissible and in line with past practices of the Borough, as Defendant did not move to re-appoint each prior calendar year Plaintiff was Superintendent from 2012 through 2015, but simply kept him on given they were satisfied with his services).

39. Prior to commencing leave in November of 2020, Defendant had given Plaintiff no indication that he was not satisfactorily performing his job (in fact, he had an excellent formal documented evaluation).

40. Instead of returning to the same role held prior to having commenced his November 2020 medical leave, Plaintiff was effectively being demoted back to the position of "Assistant Superintendent" when he returned to work.

41. Plaintiff was formally cleared to return to work effective February 4, 2021.

42. Since Plaintiff's prior job of Superintendent was still open and being advertised as a vacant position, Plaintiff formally applied for it to ensure he was considered.

43. Plaintiff wrote to the Assistant Borough Administrator Falt as follows:

"I'm submitting my resume for the position of Superintendent. Although I don't believe my job should have been posted while I was out on job protected FMLA.

I am submitting my resume as it appears the Borough posted the position and is holding interviews for qualified candidates. Given my breadth of experience in this exact role and that I left due to medical issues (and not performance related), I am asking to be considered for my former position.

Thank you for your attention.

George H Phipps."

44. Thereafter, a Council member affirmatively led Plaintiff to believe he would be called in for an interview.

45. However, Plaintiff was never called in for an interview.

46. While Defendant was not obligated to conduct formal interviews, they are bound by Local Government Ethics Laws, which obligate them to appoint someone both capable and qualified for the role.

47. Without allowing for an interview of Plaintiff, despite his application and most recently having served effectively in that role -- Defendant formally announced a new hire for the Superintendent role, effective March 17, 2021 at a public meeting.

48. The individual ultimately hired as Superintendent for 2021, was Duane Patterson, substantially less qualified than Plaintiff in terms of credentials and length of experience.

49. To wit, when Defendant had obtained a "certification of eligible candidates" for *a lower ranking position* of "Assistant Superintendent" in or about 2019 -- Duane Patterson didn't meet the stated criteria for this role (as a reminder, the hierarchy at the Department of Public Works proceeds as follows:  laborer, driver, Assistant Supervisor, Supervisor, Assistant Superintendent to the Superintendent).  The only person who met the criterion when this inquiry was conducted – was Plaintiff.

**Plaintiff's Demotion from Superintendent and/or Failure to Hire for Superintendent in January of 2022**

50. In January 2022, the Borough publicly advertised that they would be appointing for the Superintendent position beginning early January 2022.

51. Plaintiff thereafter submitted his resume and applied for the Superintendent position so that the Borough may consider him amongst any other candidates.

9

52. The Borough then decided not to appoint a candidate.

53. The Borough left the position vacant in lieu of hiring Plaintiff (while having a less senior and less qualified individual perform the duties in the interim).

54. When the senior and less qualified individual they had performing the role has since resigned, Plaintiff was yet again performing the job duties of Superintendent.

55. While the Borough repeatedly led to believe Plaintiff would be properly compensated for this additional work (and doing the job without the title), they have since appointed an external candidate to fill the Superintendent position.

### Retaliatory/Discriminatory Hostile Work Environment

56. In addition to refusing to reinstate Plaintiff to his position of Superintendent/demoting him and refusing to re-hire him for the role in 2021, Plaintiff has also been subjected to other various forms of hostility and animosity since his return to work after medical leave and through the present.

57. Plaintiff filed a Charge with the EEOC against Defendant on or about March 29, 2021.

58. Defendant has engaged in numerous incidents of retaliation in a concerted effort to interfere with his job duties and to dissuade him from pursuing the instant claims (or worse, force him to resign).

59. Solely by way of example and not intending to be an exhaustive list, Defendant has (i) deprived him the inability to hire necessary supervisory staff; (ii) stripped him of certain authority in his role as an Asst. Superintendent; (iii) treated him poorly; (iv) ignored numerous emails about important job related issues; (v) ignored numerous requests for meetings; (vi) not provided him with uniforms; (vii) denied him a Borough vehicle; (viii) deprived him of certain

benefits that other employees under their Dept. Head would receive through the Borough; and (ix) not utilizing his actual skills as an Asst. Superintendent and relegating him to menial tasks whereas other Asst. Superintendents have been given meaningful areas to oversee.

60. Defendant sent Plaintiff a certified letter dated July 25, 2021 threatening to impose discipline up to including termination merely because he exhausted his bank of sick time. This letter was sent to Plaintiff despite Defendant knowing Plaintiff suffers from serious disabilities and will require ongoing medical accommodations in the form of intermittent time off of work. (And Plaintiff has ample vacation time to use for such appointments, but Defendant is still threatening him with discipline and singling him out about his remaining paid time off and how he intends to use it when they do not do so with other employees).

61. Most recently, the Borough has provided pay increases to other supervisors (two recently in a two month period), but has not similarly provided Plaintiff with a pay increase in nearly two (2) years

62. The hostile work environment that Plaintiff has been subjected to has and is causing exacerbation of his health conditions.

63. Upon information and belief, Defendant is instilling and condoning a hostile work environment in hopes that Plaintiff's will quit his employment with Defendant.

## **Conclusion**

64. Based on the foregoing, Plaintiff believes and therefore avers that he was denied reinstatement/demoted/not rehired in 2021, again in January 2022, and subjected to an ongoing and retaliatory hostile work environment in violation of the NJ LAD, ADA, FMLA, and NJ common law.

## COUNT I
### Violations of the Family and Medical Leave Act ("FMLA")
### (Interference & Retaliation)
### January 2021 Failure to Reinstate, Demotion and Failure to Hire

65. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

66. Plaintiff was an eligible employee under the definitional terms of the FMLA, 29 U.S.C. § 2611(a)(i)(ii).

67. In or about November 2020, Plaintiff requested FMLA-qualifying leave from Defendant, his employer, with whom he had been employed for at least twelve months pursuant to the requirements of 29 U.S.C.A § 2611(2)(i).

68. Plaintiff had at least 1,250 hours of service with the Defendant during his last full year of employment preceding his request for FMLA-qualifying leave.

69. Defendant is engaged in an industry affecting commerce and employs fifty (50) or more employees for each working day during each of the twenty (20) or more calendar work weeks in the current or proceeding calendar year, pursuant to 29 U.S.C.A § 2611(4)(A)(i).

70. Plaintiff was entitled to receive leave pursuant to 29 U.S.C.A § 2612 (a)(1) for a total of twelve (12) work weeks of leave on a block or intermittent basis.

71. Defendant committed interference and retaliation violations of the FMLA by: (1) failing to re-instate Plaintiff in January of 2021 to DPW Superintendent in retaliation for requesting and/or exercising his FMLA rights and/or for taking FMLA-qualifying leave; (2) considering Plaintiff's FMLA-qualifying leave in the decision to not re-appoint Plaintiff to the DPW Superintendent position; (3) refusing to re-appoint Plaintiff in order to try and dissuade and/or prevent Plaintiff from requesting and/or utilizing FMLA-qualifying leave in the future; (4) engaging in conduct which discouraged Plaintiff from exercising his FMLA rights and which

would discourage, dissuade and/or chill a reasonable person's desire to request and/or take FMLA leave; and (5) failing to notify Plaintiff via individualized notice of his rights and responsibilities under the FMLA, and he suffered prejudice as a result of Defendant's failure to adhere to the notice provisions.

**COUNT II**
**Violations of the Family and Medical Leave Act ("FMLA")**
**(Interference & Retaliation)**
**January 2022 Failure to Reinstate, Demotion and Failure to Hire**

72. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

73. Plaintiff was an eligible employee under the definitional terms of the FMLA, 29 U.S.C. § 2611(a)(i)(ii).

74. In or about November 2020, Plaintiff requested FMLA-qualifying leave from Defendant, his employer, with whom he had been employed for at least twelve months pursuant to the requirements of 29 U.S.C.A § 2611(2)(i).

75. Plaintiff had at least 1,250 hours of service with the Defendant during his last full year of employment preceding his request for FMLA-qualifying leave.

76. Defendant is engaged in an industry affecting commerce and employs fifty (50) or more employees for each working day during each of the twenty (20) or more calendar work weeks in the current or proceeding calendar year, pursuant to 29 U.S.C.A § 2611(4)(A)(i).

77. Plaintiff was entitled to receive leave pursuant to 29 U.S.C.A § 2612 (a)(1) for a total of twelve (12) work weeks of leave on a block or intermittent basis.

78. Defendant committed interference and retaliation violations of the FMLA by: (1) failing to re-instate Plaintiff in January of 2022 to DPW Superintendent in retaliation for requesting and/or exercising his FMLA rights and/or for taking FMLA-qualifying leave ; (2) failing to give

Plaintiff a raise in retaliation for requesting and/or exercising his FMLA rights and/or for taking FMLA-qualifying leave; (3) considering Plaintiff's FMLA-qualifying leave in the decision to not re-appoint Plaintiff to the DPW Superintendent position; (4) considering Plaintiff's FMLA-qualifying leave in the decision to not issue Plaintiff a raise in 2022; (5) refusing to re-appoint Plaintiff in order to try and dissuade and/or prevent Plaintiff from requesting and/or utilizing FMLA-qualifying leave in the future; (6) failure to provide Plaintiff with pay increases; (7) engaging in conduct which discouraged Plaintiff from exercising his FMLA rights and which would discourage, dissuade and/or chill a reasonable person's desire to request and/or take FMLA leave; and (8) failing to notify Plaintiff via individualized notice of his rights and responsibilities under the FMLA, and he suffered prejudice as a result of Defendant's failure to adhere to the notice provisions.

## COUNT III
### Violations of the New Jersey Law Against Discrimination ("NJ LAD")
**([1] Actual/Perceived/Record of Disabilities Discrimination; [2] Retaliation; [3] Failure to Reinstate and Demotion, Failure to Hire) and [4] Hostile Work Environment)**
**- January 2021 -**

79. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

80. Plaintiff suffered from qualifying health conditions under the NJ LAD for which he requested and utilized reasonable accommodations in November of 2020 through February 4, 2020.

81. In or about January of 2021, Defendant's Council refused to promote Plaintiff to his previously held position of DPW superintendent because of: (1) his known and/or perceived health problems; (2) his record of impairment; and/or (3) his requested/utilized accommodations. These actions as aforesaid constitute unlawful discrimination and retaliation under the NJ LAD.

14

## COUNT IV
### Violations of the New Jersey Law Against Discrimination ("NJ LAD")
([1] Actual/Perceived/Record of Disabilities Discrimination; [2] Retaliation; [3] Failure to Reinstate and Demotion, Failure to Hire) and [4] Hostile Work Environment)
- January 2022 -

82. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

83. Plaintiff suffered from qualifying health conditions under the NJ LAD for which he requested and utilized reasonable accommodations in November of 2020 through February 4, 2020.

84. In or about January of 2022, Defendant's Council refused to promote Plaintiff to his previously held position of DPW superintendent and failed to give Plaintiff a raise because of: (1) his known and/or perceived health problems; (2) his record of impairment; (3) his requested/utilized accommodations; and/or (4) his complaints of discrimination and retaliation.

85. These actions as aforesaid constitute unlawful discrimination and retaliation under the NJ LAD.

## COUNT V
### Violations of New Jersey Common Law
(Public Policy Violation)
- January 2021 Failure to Reinstate and Demotion, Failure to Hire -

86. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

87. Upon information and belief, Plaintiff was not appointed to DPW Superintendent for the 2021 term in substantial part for seeking worker's compensation benefits, making a claim for worker's compensation benefits against Defendant, and/or for his work-related injuries.

88. It is against New Jersey's public policy for an employee to be disparately treated for making a worker's compensation claim. *Stewart v. County of Hudson*, 2011 N.J. Super. Unpub. LEXIS 1965, 34 (App. Div. July 22, 2011).

89. These actions as aforesaid constitute public policy violations in New Jersey.

## COUNT VI
### Violations of the Americans with Disabilities Act, as Amended ("ADA")
([1] Actual/Perceived/Record of Disabilities Discrimination; [2] Retaliation; [3] Failure to Reinstate and Demotion, Failure to Hire) and [4] Hostile Work Environment)
- January 2021 -

90. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

91. Plaintiff suffered from qualifying health conditions under the ADA for which he requested and utilized reasonable accommodations in November of 2020 through February 4, 2020.

92. In particular, Plaintiff suffers from various mental health conditions, which at times, substantially limit his ability to think, concentrate, focus, sleep and work, among other major life activities (especially when he experiences flare ups of his condition).

93. In or about January of 2021, Defendant's Council refused to promote Plaintiff to his previously held position of DPW superintendent because of: (1) his known and/or perceived health problems; (2) his record of impairment; and/or (3) his requested/utilized accommodations.

94. These actions as aforesaid constitute unlawful discrimination and retaliation under the ADA.

## COUNT VII
### Violations of the Americans with Disabilities Act, as Amended ("ADA")
([1] Actual/Perceived/Record of Disabilities Discrimination; [2] Retaliation; [3] Failure to Reinstate and Demotion, Failure to Hire) and [4] Hostile Work Environment)
- January 2022 -

95. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

96. Plaintiff suffered from qualifying health conditions under the ADA for which he requested and utilized reasonable accommodations in November of 2020 through February 4, 2020.

97. In particular, Plaintiff suffers from various mental health conditions, which at times, substantially limit his ability to think, concentrate, focus, sleep and work, among other major life activities (especially when he experiences flare ups of his condition).

98. In or about January of 2022, Defendant's Council refused to promote Plaintiff to his previously held position of DPW superintendent and failed to give Plaintiff a raise because of: (1) his known and/or perceived health problems; (2) his record of impairment; (3) his requested/utilized accommodations; and/or (4) his complaints of discrimination and retaliation.

99. These actions as aforesaid constitute unlawful discrimination and retaliation under the ADA.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendant is to promulgate and adhere to a policy prohibiting discrimination in the future against any employee(s);

B. Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's

illegal actions, including but not limited to back pay, front pay, salary pay increases, bonuses, insurance, benefits, training, promotions, reinstatement and seniority;

   C. Plaintiff is to be awarded liquidated and/or punitive damages as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

   D. Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper and appropriate (including but not limited to damages for emotional distress, pain, suffering and humiliation); and

   E. Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By:  */s Christine E. Burke*
   _____
   Ari R. Karpf, Esq.
   Christine E. Burke, Esq.
   3331 Street Road
   Two Greenwood Square, Suite 128
   Bensalem, PA 19020
   (215) 639-0801

Dated: August 24, 2022